IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| William Myers, as special administrator | ) | |
| for the Estate of Emma Jean Myers, | ) | |
| deceased, | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| vs. | ) | No. 3:13-cv-01152-MJR-SCW |
| | ) | |
| FIRESIDE-LTC, LLC | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| DEFENDANT. | ) | |

## COMPLAINT

COMES NOW Plaintiff, William Myers, as special administrator for the Estate of Emma Jean Myers, deceased, by and through his undersigned counsel, and states as follows on information and belief:

### Allegations Relating to Jurisdiction and Venue

1.      Plaintiff is a citizen of the State of Illinois.

2.      Plaintiff's decedent was a citizen of the State of Illinois at the time of her death.

3.      Defendant is a citizen of the State of Georgia

        a.      Defendant maintains its principal place of business (including but not limited to its headquarters) in the State of Georgia.

        b.      Defendant is incorporated in the State of Georgia.

4.      The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

5.      This district is "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred," in that a substantial part of the events or omissions

giving rise to the claim occurred in Centralia, Illinois, the location of the nursing home (Fireside House of Centralia).

6.      Defendant, Fireside LTC, LLC, is licensed by the Illinois Department of Public Health under the Nursing Home Care Act, 210 ILCS 45/3-601 *et seq.*, and owned and operated and still owns and operates a nursing home facility at 1030 Martin Luther King Drive, Centralia, IL 62801 named Fireside House of Centralia, and is therefore within this Court's jurisdiction.

## COUNT I
### (Nursing Home Care Act)

COMES NOW Plaintiff, William Myers, as Special Administrator of the Estate Of Emma Jean Myers, Deceased, through his counsel, and for Count I of his cause of action, states as follows:

1.      Plaintiff is the duly appointed Special Administrator of the Estate Of Emma Jean Myers, Deceased.

2.      Defendant, Fireside LTC, LLC, is licensed by the Illinois Department of Public Health under the Nursing Home Care Act, 210 ILCS 45/3-601 *et seq.*, and owned and operated and still owns and operates a nursing home facility at 1030 Martin Luther King Drive, Centralia, IL 62801 named Fireside House of Centralia.

3.      Between January 10, 2012 through January 16, 2012,and February 9, 2012 through April 6, 2012,the date of her death, Emma Jean Myers was a resident of Fireside House of Centralia.

4.      That at all times mentioned herein, the Illinois Nursing Home Care Act was in effect, and 210 ILCS 45/3-601 of the Act states:

"The owner and licensee are liable to a resident for any intentional or negligent act or

omission of their agents or employees which injures the resident."

5.      At all times mentioned herein Fireside LTC, LLC, individually and through its agents and employees, had one or more of the following duties to Emma Jean Myers:

(a)     to comply with the Nursing Home Care Act;

(b)     to refrain from neglecting its residents;

(c)     to provide suitable attention and adequate nursing care in accordance with Emma Jean Myers's condition and consistent with current acceptable nursing practice;

(d)     to use that degree of skill and learning ordinarily used under the same or similar circumstances by the members of the nursing profession;

(e)     to conduct a comprehensive, accurate, and standardized assessment of Emma Jean Myers's current condition;

(f)     to prevent its residents from being inflicted with physical or emotional injury or harm;

(g)     to provide the necessary care and services to attain or maintain the highest practicable physical, mental, and psychological well-being of Emma Jean Myers, in accordance with her comprehensive assessment and plan of care;

(h)     to follow and implement physician's orders for Emma Jean Myers;

(i)     to thoroughly investigate and document all incidents and injuries suffered by Emma Jean Myers at the facility;

(j)     to immediately notify and consult with appropriate medical personnel whenever Emma Jean Myers had a condition that required medical expertise or facilities beyond what could be provided by Fireside LTD, LLC.

6.      Fireside LTC, LLC, individually and through its agents and employees, breached one or more of the aforementioned duties owed to Emma Jean Myers by way of one or more of

3

the following negligent acts or omissions, of which it knew or should have known:

(a)     failed to provide adequate care and treatment to prevent or treat pressure sores, when its own assessments repeatedly indicated Emma Jean Myers was at high risk for pressure sores and its Care Area Assessment indicated its Care Area was triggered for pressure ulcers due to skin desensitized to pain or pressure, decreased mobility, decrease in functional ability, impaired mobility, urinary incontinence, bowel incontinence, and other conditions;

(b)     failed to provide adequate care and treatment to prevent or treat pressure sores, even after Emma Jean Myers had developed pressure sores and/or decubitus ulcers while she was a resident of Fireside House of Centralia;

(c)     failed to provide adequate care and treatment to prevent Emma Jean Myers from becoming dehydrated when its own assessments indicated she was at risk of dehydration;

(d)     failed to add or implement interventions listed in its own assessments under the heading "POSSIBLE INTERVENTIONS TO BE ADDED TO CARE PLAN," when such interventions were appropriate and necessary in light of Emma Jean Myers' conditions;

(e)     failed to provide "Nutrition or hydration intervention to manage skin problems" when such interventions were appropriate and necessary in light of Emma Jean Myers' conditions;

(f)     failed to provide Emma Jean Myers with the necessary care and services to attain or maintain the highest practicable physical and mental well-being;

(g)     failed to properly monitor Emma Jean Myers' condition, including but not limited to her food intake, temperature and vital signs;

(h)     failed to provide Emma Jean Myers with sufficient fluid intake to maintain proper hydration and health;

(i)     failed to properly monitor pressure sores that developed on Emma Jean Myers' body;

(j)     failed to have the pressure sores that developed on Emma Jean Myers' body properly treated.

(k)     failed to keep Emma Jean Myers free from avoidable pressure sores;

(l)     failed to diagnose the pressure sore/s that developed on Emma Jean Myers' body and resulted in her developing infection;

(m)     failed to appropriately document the nature and extent of the pressure sore/s that developed on Emma Jean Myers' body;

(n)     failed to inform Emma Jean Myers' physician of the existence and/or nature and extent of pressure sore/s that developed on Emma Jean Myers' body;

(o)     failed to rotate Emma Jean Myers in her bed so as to avoid the formation and degradation of pressure sore/s;

(p)     failed to transfer Emma Jean Myers to another facility in a timely fashion when it could no longer meet the needs of Emma Jean Myers;

(q)     failed to address the dietary needs of Emma Jean Myers within the acceptable standards of care;

(r)     failed to provide Emma Jean Myers with appropriate nursing care and treatment;

(s)     failed to have adequate numbers of properly trained nursing personnel, including aids and orderlies, to provide proper care;

(t)     failed to have competent nursing staff who have been screened at the time of hiring and monitored throughout employment in order to eliminate unfit personnel;

(u)     failed to train its nursing and/or nursing aid staff to care for Emma Jean Myers;

(v)     failed to have adequate care planning to ensure that Emma Jean Myers had an individualized care plan that would be followed by the nursing and/or nursing aid staff;

(w)     failed to have adequate policies and procedures to assure that personal care was provided to Emma Jean Myers on a uniform and uninterrupted basis;

(x)     failed to provide adequate supervision and monitoring of Emma

Jean Myers to assure that her health care plan, physician's orders and policies/procedures were implemented and complied with;

(y)   engaged in conduct that further injured Emma Jean Myers, including but not limited to placing a mask for sleep apnea on her that was so tight it left marks;

(z)   failed to clean Emma Jean Myers in a timely fashion after she suffered bouts of urinary and/or bowel incontinence, such that she was forced to lie in urine and feces.

7.   That one or more the above acts or omissions of Fireside LTC, LLC, individually and through its employees and agents, was a proximate cause of Emma Jean Myers's injuries, more fully described below.

8.   That as a direct and proximate result of the aforementioned acts or omissions, Emma Jean Myers did experience personal injury to her body as a whole, including but not limited to a urinary tract infection, sepsis, decubitus ulcers, severe dehydration, and renal failure and experienced:

(a)   medical expenses;

(b)   pain and suffering;

(c)   mental anguish;

(d)   disfigurement; and

(e)   physical impairment.

9.   All of the aforementioned occurred prior to the death of Emma Jean Myers, Deceased, subjecting Defendant to liability pursuant to the Illinois Survival Act (755 ILCS 5/27-6).

WHEREFORE, Plaintiff, William Myers, as Special Administrator of the Estate Of Emma Jean Myers, Deceased, prays for judgment in his favor and against Defendant, Fireside

LTC, LLC, in an amount in excess of the jurisdictional limits, for his attorney's fees as allowed by the Nursing Home Care Act, for his costs herein expended, and for such other and further relief as the Court deems just and proper in these circumstances.  Plaintiff requests trial by jury on all claims.

<div align="center">

**COUNT II**
**(Common Law Negligence)**

</div>

COMES NOW Plaintiff, William Myers, as Special Administrator of the Estate Of Emma Jean Myers, Deceased, by and through his counsel, and for Count II of his cause of action, states as follows:

1. Plaintiff is the duly appointed Special Administrator of the Estate Of Emma Jean Myers, Deceased.

2. Defendant, Fireside LTC, LLC, is licensed by the Illinois Department of Public Health under the Nursing Home Care Act, 210 ILCS 45/3-601 *et seq.*, and owned and operated and still owns and operates a nursing home facility at 1030 Martin Luther King Drive, Centralia, IL 62801 named Fireside House of Centralia.

3. Between January 10, 2012 through January 16, 2012,and February 9, 2012 through April 6, 2012,the date of her death, Emma Jean Myers was a resident of Fireside House of Centralia.

4. That at all times mentioned herein, Defendant was in the business of providing nursing home care.

5. At all times mentioned herein Fireside LTC, LLC, individually and through its agents and employees, had one or more of the following duties to Emma Jean Myers:

(a) to comply with the Nursing Home Care Act;

(b)     to refrain from neglecting its residents;

(c)     to provide suitable attention and adequate nursing care in accordance with Emma Jean Myers's condition and consistent with current acceptable nursing practice;

(d)     to use that degree of skill and learning ordinarily used under the same or similar circumstances by the members of the nursing profession;

(e)     to conduct a comprehensive, accurate, and standardized assessment of Emma Jean Myers's current condition;

(f)     to prevent its residents from being inflicted with physical or emotional injury or harm;

(g)     to provide the necessary care and services to attain or maintain the highest practicable physical, mental, and psychological well-being of Emma Jean Myers, in accordance with her comprehensive assessment and plan of care;

(h)     to follow and implement physician's orders for Emma Jean Myers;

(i)     to thoroughly investigate and document all incidents and injuries suffered by Emma Jean Myers at the facility;

(j)     to immediately notify and consult with appropriate medical personnel whenever Emma Jean Myers had a condition that required medical expertise or facilities beyond what could be provided by Fireside LTD, LLC.

6.     Fireside LTC, LLC, individually and through its agents and employees, breached one or more of the aforementioned duties owed to Emma Jean Myers by way of one or more of the following negligent acts or omissions, of which it knew or should have known:

(a)     failed to provide adequate care and treatment to prevent or treat pressure sores, when its own assessments repeatedly indicated Emma Jean Myers was at high risk for pressure sores and its Care Area Assessment indicated its Care Area was triggered for pressure ulcers due to skin desensitized to pain or pressure, decreased mobility, decrease in functional ability, impaired mobility, urinary incontinence, bowel incontinence, and other conditions;

(b)     failed to provide adequate care and treatment to prevent or treat pressure sores, even after Emma Jean Myers had developed pressure sores and/or decubitus ulcers while she was a resident of Fireside House of Centralia;

(c)     failed to provide adequate care and treatment to prevent Emma Jean Myers from becoming dehydrated when its own assessments indicated she was at risk of dehydration;

(d)     failed to add or implement interventions listed in its own assessments under the heading "POSSIBLE INTERVENTIONS TO BE ADDED TO CARE PLAN," when such interventions were appropriate and necessary in light of Emma Jean Myers' conditions;

(e)     failed to provide "Nutrition or hydration intervention to manage skin problems" when such interventions were appropriate and necessary in light of Emma Jean Myers' conditions;

(f)     failed to provide Emma Jean Myers with the necessary care and services to attain or maintain the highest practicable physical and mental well-being;

(g)     failed to properly monitor Emma Jean Myers' condition, including but not limited to her food intake, temperature and vital signs;

(h)     failed to provide Emma Jean Myers with sufficient fluid intake to maintain proper hydration and health;

(i)     failed to properly monitor pressure sores that developed on Emma Jean Myers' body;

(j)     failed to have the pressure sores that developed on Emma Jean Myers' body properly treated.

(k)     failed to keep Emma Jean Myers free from avoidable pressure sores;

(l)     failed to diagnose the pressure sore/s that developed on Emma Jean Myers' body and resulted in her developing infection;

(m)     failed to appropriately document the nature and extent of the pressure sore/s that developed on Emma Jean Myers' body;

(n)     failed to inform Emma Jean Myers' physician of the existence and/or

nature and extent of pressure sore/s that developed on Emma Jean Myers' body;

(o)    failed to rotate Emma Jean Myers in her bed so as to avoid the formation and degradation of pressure sore/s;

(p)    failed to transfer Emma Jean Myers to another facility in a timely fashion when it could no longer meet the needs of Emma Jean Myers;

(q)    failed to address the dietary needs of Emma Jean Myers within the acceptable standards of care;

(r)    failed to provide Emma Jean Myers with appropriate nursing care and treatment;

(s)    failed to have adequate numbers of properly trained nursing personnel, including aids and orderlies, to provide proper care;

(t)    failed to have competent nursing staff who have been screened at the time of hiring and monitored throughout employment in order to eliminate unfit personnel;

(u)    failed to train its nursing and/or nursing aid staff to care for Emma Jean Myers;

(v)    failed to have adequate care planning to ensure that Emma Jean Myers had an individualized care plan that would be followed by the nursing and/or nursing aid staff;

(w)    failed to have adequate policies and procedures to assure that personal care was provided to Emma Jean Myers on a uniform and uninterrupted basis;

(x)    failed to provide adequate supervision and monitoring of Emma Jean Myers to assure that her health care plan, physician's orders and policies/procedures were implemented and complied with;

(y)    engaged in conduct that further injured Emma Jean Myers, including but not limited to placing a mask for sleep apnea on her that was so tight it left marks;

(z)    failed to clean Emma Jean Myers in a timely fashion after she suffered bouts of urinary and/or bowel incontinence, such that she

was forced to lie in urine and feces.

7.    That one or more the above acts or omissions of Fireside LTC, LLC, individually and through its employees and agents, was a proximate cause of Emma Jean Myers's injuries, more fully described below.

8.    That as a direct and proximate result of the aforementioned acts or omissions, Emma Jean Myers did experience personal injury to her body as a whole, including but not limited to a urinary tract infection, sepsis, decubitus ulcers, severe dehydration, and renal failure and experienced:

      (a)    medical expenses;

      (b)    pain and suffering;

      (c)    mental anguish;

      (d)    disfigurement; and

      (e)    physical impairment.

9.    All of the aforementioned occurred prior to the death of Emma Jean Myers, Deceased, subjecting Defendant to liability pursuant to the Illinois Survival Act (755 ILCS 5/27-6).

WHEREFORE, Plaintiff, William Myers, as Special Administrator of the Estate Of Emma Jean Myers, Deceased, prays for judgment in his favor and against Defendant, Fireside LTC, LLC, in an amount in excess of the jurisdictional limits, for his costs herein expended, and for such other and further relief as the Court deems just and proper in these circumstances. Plaintiff requests trial by jury on all claims.

## COUNT III
## (Wrongful Death Act)

COMES NOW Plaintiff, William Myers, as Special Administrator of the Estate Of Emma

Jean Myers, Deceased, by and through his counsel, and for Count III of his cause of action, states

as follows:

1.     Plaintiff is the duly appointed Special Administrator of the Estate Of Emma Jean

Myers, Deceased.

2.     Defendant, Fireside LTC, LLC, is licensed by the Illinois Department of Public

Health under the Nursing Home Care Act, 210 ILCS 45/3-601 *et seq.*, and owned and operated

and still owns and operates a nursing home facility at 1030 Martin Luther King Drive, Centralia,

IL 62801 named Fireside House of Centralia.

3.     Between January 10, 2012 through January 16, 2012,and February 9, 2012

through April 6, 2012,the date of her death, Emma Jean Myers was a resident of Fireside House

of Centralia.

4.     That at all times mentioned herein the Illinois Wrongful Death Act was in effect,

and 740 ILCS 180/1 of the act states:

> Whenever the death of a person shall be caused by wrongful act, neglect or
> default, and the act, neglect or default is such as would, if death had not ensued,
> have entitled the party injured to maintain an action and recover damages in
> respect thereof, then and in every such case the person who or company or
> corporation which would have been liable if death had not ensued, shall be liable
> to an action for damages, notwithstanding the death of the person injured, and
> although the death shall have been caused under such circumstances as amount in
> law to felony.

5.     That at all times mentioned herein, Defendant was in the business of providing

nursing home care.

6.      At all times mentioned herein Fireside LTC, LLC, individually and through its

agents and employees, had one or more of the following duties to Emma Jean Myers:

(a)     to comply with the Nursing Home Care Act;

(b)     to refrain from neglecting its residents;

(c)     to provide suitable attention and adequate nursing care in accordance with
        Emma Jean Myers's condition and consistent with current acceptable
        nursing practice;

(d)     to use that degree of skill and learning ordinarily used under the
        same or similar circumstances by the members of the nursing
        profession;

(e)     to conduct a comprehensive, accurate, and standardized assessment
        of Emma Jean Myers's current condition;

(f)     to prevent its residents from being inflicted with physical or
        emotional injury or harm;

(g)     to provide the necessary care and services to attain or maintain the
        highest practicable physical, mental, and psychological well-being
        of Emma Jean Myers, in accordance with her comprehensive
        assessment and plan of care;

(h)     to follow and implement physician's orders for Emma Jean Myers;

(i)     to thoroughly investigate and document all incidents and injuries
        suffered by Emma Jean Myers at the facility;

(j)     to immediately notify and consult with appropriate medical
        personnel whenever Emma Jean Myers had a condition that
        required medical expertise or facilities beyond what could be
        provided by Fireside LTD, LLC.

7.      Fireside LTC, LLC, individually and through its agents and employees, breached

one or more of the aforementioned duties owed to Emma Jean Myers by way of one or more of

the following negligent acts or omissions, of which it knew or should have known:

(a)     failed to provide adequate care and treatment to prevent or treat pressure
        sores, when its own assessments repeatedly indicated Emma Jean Myers

was at high risk for pressure sores and its Care Area Assessment indicated its Care Area was triggered for pressure ulcers due to skin desensitized to pain or pressure, decreased mobility, decrease in functional ability, impaired mobility, urinary incontinence, bowel incontinence, and other conditions;

(b)     failed to provide adequate care and treatment to prevent or treat pressure sores, even after Emma Jean Myers had developed pressure sores and/or decubitus ulcers while she was a resident of Fireside House of Centralia;

(c)     failed to provide adequate care and treatment to prevent Emma Jean Myers from becoming dehydrated when its own assessments indicated she was at risk of dehydration;

(d)     failed to add or implement interventions listed in its own assessments under the heading "POSSIBLE INTERVENTIONS TO BE ADDED TO CARE PLAN," when such interventions were appropriate and necessary in light of Emma Jean Myers' conditions;

(e)     failed to provide "Nutrition or hydration intervention to manage skin problems" when such interventions were appropriate and necessary in light of Emma Jean Myers' conditions;

(f)     failed to provide Emma Jean Myers with the necessary care and services to attain or maintain the highest practicable physical and mental well-being;

(g)     failed to properly monitor Emma Jean Myers' condition, including but not limited to her food intake, temperature and vital signs;

(h)     failed to provide Emma Jean Myers with sufficient fluid intake to maintain proper hydration and health;

(i)     failed to properly monitor pressure sores that developed on Emma Jean Myers' body;

(j)     failed to have the pressure sores that developed on Emma Jean Myers' body properly treated.

(k)     failed to keep Emma Jean Myers free from avoidable pressure sores;

(l)     failed to diagnose the pressure sore/s that developed on Emma Jean Myers' body and resulted in her developing infection;

(m)     failed to appropriately document the nature and extent of the pressure sore/s that developed on Emma Jean Myers' body;

(n)     failed to inform Emma Jean Myers' physician of the existence and/or nature and extent of pressure sore/s that developed on Emma Jean Myers' body;

(o)     failed to rotate Emma Jean Myers in her bed so as to avoid the formation and degradation of pressure sore/s;

(p)     failed to transfer Emma Jean Myers to another facility in a timely fashion when it could no longer meet the needs of Emma Jean Myers;

(q)     failed to address the dietary needs of Emma Jean Myers within the acceptable standards of care;

(r)     failed to provide Emma Jean Myers with appropriate nursing care and treatment;

(s)     failed to have adequate numbers of properly trained nursing personnel, including aids and orderlies, to provide proper care;

(t)     failed to have competent nursing staff who have been screened at the time of hiring and monitored throughout employment in order to eliminate unfit personnel;

(u)     failed to train its nursing and/or nursing aid staff to care for Emma Jean Myers;

(v)     failed to have adequate care planning to ensure that Emma Jean Myers had an individualized care plan that would be followed by the nursing and/or nursing aid staff;

(w)     failed to have adequate policies and procedures to assure that personal care was provided to Emma Jean Myers on a uniform and uninterrupted basis;

(x)     failed to provide adequate supervision and monitoring of Emma Jean Myers to assure that her health care plan, physician's orders and policies/procedures were implemented and complied with;

(y)     engaged in conduct that further injured Emma Jean Myers,

including but not limited to placing a mask for sleep apnea on her that was so tight it left marks;

(z)     failed to clean Emma Jean Myers in a timely fashion after she suffered bouts of urinary and/or bowel incontinence, such that she was forced to lie in urine and feces.

8.     That one or more the above acts or omissions of Fireside LTC, LLC, individually and through its employees and agents, was a proximate cause of Emma Jean Myers's injuries, more fully described below.

9.     That as a direct and proximate result of the aforementioned acts or omissions, Emma Jean Myers did experience personal injury to her body as a whole, including but not limited to a urinary tract infection, sepsis, decubitus ulcers, severe dehydration, and renal failure and experienced:

(a)     medical expenses;

(b)     pain and suffering;

(c)     mental anguish;

(d)     disfigurement; and

(e)     physical impairment.

10.     As a direct and proximate result of one or more of the aforementioned acts or omissions of Defendant, individually or through its agents and/or employees, Emma Jean Myers developed a urinary tract infection, sepsis, severe dehydration, and pronounced renal failure secondary to dehydration and sepsis, resulting in her death on April 6, 2012.  Consequently, Emma Jean Myers' next of kin have suffered great losses of a personal and pecuniary nature, including the loss of companionship and society of Emma Jean Myers, subjecting the Defendant to liability pursuant to the Illinois Wrongful Death Act (740 ILCS 180/1 et seq.).

WHEREFORE, Plaintiff, William Myers, as Special Administrator of the Estate Of

Emma Jean Myers, Deceased, prays for judgment in his favor and against Defendant, Fireside

LTC, LLC, in an amount in excess of the jurisdictional limits, for his costs herein expended, and

for such other and further relief as the Court deems just and proper in these circumstances.

Plaintiff requests trial by jury on all claims.

<div style="margin-left:40%">

Respectfully submitted,

ARMBRUSTER, DRIPPS,
WINTERSCHEIDT & BLOTEVOGEL, LLC


By:     /s/ Michael Blotevogel
       Michael T. Blotevogel #6282543
       Charles W. Armbruster III ##6211630
       219 Piasa St.
       Alton, Illinois 62002
       618/208-0320
       800/917-1529
       F:  800/927-1529
       mikeb@adwblaw.com;
       charlesa@adwblaw.com

***ATTORNEYS FOR WILLIAM MYERS***

</div>